Good morning. May it please the Court, I'm Lauren Goldman. On behalf of Defendant Philip Morris, I'd like to reserve five minutes of my time for rebuttal, if the Court would permit me. The most fundamental element of issue preclusion, especially the type of offensive non-mutual issue preclusion and issue in this case, is that the identical issue was actually litigated and necessarily decided in the proponent's favor in the prior case. Okay, here's what I don't understand about your position. Has anything changed about the nature of the California law applicable here as to the question of what caused this woman's lung cancer? I'm sorry, Your Honor, are you asking me? Has anything changed in the California law since the mother's trial? Since the mother's trial in 2002. You're not claiming any change of law, right? Well, the law has developed, has become clearer, but no, fundamentally our... So how is the issue different? You may have blown something in the earlier trial by not emphasizing what you want to emphasize now, but the issue was exactly the same, i.e., was this woman's cancer caused by actions by the tobacco company outside the immune period, right? No, Your Honor. Why? So here, let me take a step back and I'll answer your question. So Myers and Nagley came down two weeks before this case was tried. I'm sorry? Myers and Nagley, the two companion cases from the California Supreme Court that make the explanation about pre-immunity period medical causation. Those decisions came down a couple of weeks before the case was tried. Okay, so they came out. The law was exactly the same. The law was the same. If you did not emphasize what you're emphasizing now, that's your problem. It's not a question of emphasis, Your Honor. It's a question of what findings that first jury made. That first jury was not asked to find and did not find that Mrs. Bullock's smoking prior to 1988 caused her lung cancer. Wasn't that jury instructed in something pretty close to the words of the statute, taking the immune period out? No, it was not, Your Honor. It was given an instruction that in assessing Mrs. Bullock's claims for fraud. Actually, let me just pull out the exact instruction. It said, you may not find defendant liable on plaintiff's claims of defective product, negligence or fraud based upon conduct between January 1, 1988 and December 31, 1997. What that conveyed to the jury was that acts of negligence, fraud and product defect during that time could not be considered. It did not convey to the jury the thing that we think should have been litigated in Jody Bullock's following case. I think you're right about that, but I guess my problem with your argument is this. The issue as I see it was medical causation. You now have a new argument that you'd like to advance or that you wish you had advanced at the trial to defeat the plaintiff's showing of medical causation. But it was available to you. As Judge Berzon was emphasizing, there was no change in the law. So it seems to me you're sort of stuck by the California cases that say even with respect to issue preclusion, not just claim preclusion, but even with respect to issue preclusion. If the issue is teed up and you merely have better arguments or better facts to support your arguments with respect to a particular issue, if you don't raise them, you're still bound. No. What those cases say is that if you have new facts, if we had some new. Legal theories or legal theories. And this is a legal theory. This is not a new legal theory, Your Honor. It most definitely is. You're relying on this intervening set of California Supreme Court cases that established a new legal principle that added to the burden that a plaintiff in one of these suits has to meet in order to prove medical causation, right? No. What we're saying is that there is a new separate element of the case, a new separate issue. No. It's a part of medical causation. And it's an added wrinkle that this immunity period that got, you know, taken away. It's a new wrinkle that's been added into the plaintiff's case. It was you were fully on notice that that new wrinkle needed to be met at the time this case was tried. And you just simply you not you, but your client simply failed to raise it. And it seems to me you're the California cases are pretty clear that that failure to raise the argument in support of a defense to medical causation. You're you're just you're still bound. Well, there's two problems with that, Your Honor. The first problem with that is that we disagree with the court's characterization of this as simply a new wrinkle or a new theory. This is a new element. She had to prove that her injuries were caused by smoking outside the immunity period. Well, if she had to, then you should have told that to the judge and the jury and in the earlier case. Well, that would be waiver. And so that's the second problem with it. What the cases squarely say is that waiver has no role in connection with issue preclusion. All that matters for issue preclusion is whether the issue, the identical issue. The jury in the earlier jury was asked whether a plaintiff's injury was caused by a failure of the defendant adequately to wonder about the dangers of smoking cigarettes before July 1, 1969, and they said yes, right? That's a separate issue, Your Honor, yes. Why is that a separate issue? I still want to come back to Judge Wofford's question. I agree it's a separate issue. I mean, you should answer that. Okay. I also wanted to talk, though, about the direct TV and the other cases that you were talking about, but let me just answer this question first. It's a separate issue because the theory on the pre-1969 claims is that Philip Morris's conduct before 1969, its acts of fraud and failure to warn and concealment, caused Mrs. Bullock to begin smoking and to become addicted and to become unable to quit. So your argument, so is your legal argument essentially that the immune period, I mean, she had to have been smoking your cigarettes during the immune period? What if she was smoking cigarettes from Jordan during that period? Well, that might be an interesting wrinkle because I don't know if there was immunity for Jordan manufacturers. Smoking American tobaccos. It doesn't matter on this theory, which would have made her liable in this case as well, whose cigarettes she was smoking during that period, right? Your Honor, the immunity period, the immunity statute, the repeal statute as construed in Myers-Niggles set up a very unusual situation in American law. What they say is that nothing that happened between 1988 and 1998 counts. They didn't say nothing. It says that you can't be held liable for what happened during that period. Correct. It says during that time, the way it's been construed by the California Supreme Court, it says during that time, selling cigarettes breached no legal duty and constituted no tort. But was your essential argument that they were backing out the usual causation standard? In other words, ordinarily under California law, a cause has to be a substantial factor, right? If the failure to warn her about the dangers of smoking cigarettes before July 1, 1969, was a substantial factor, then you would be liable under ordinary California law. You seem to be saying that this new statute, the immune period, says that substantial factor is no longer the standard, that you also have to have nothing having happened during the immune period, even if there was a substantial factor on which you would be liable before the immune period. Is that your argument? A couple answers to that. That is our argument. We don't even need to go that far to prevail here. Let me just take pieces of that in turn, if I might. First is that she never said that her smoking before 1969 caused the injury. The theory was that the conduct before 1969, the fraud, the failure to warn, caused the smoking from 1956 to 2001, and that the cumulative effect of all of that smoking caused her injury. Our position is that that's not what she had to show. What she had to show was that the smoking from 1956 to 1988 caused her injury. So that's the first part. The second part caused her death, yes. We don't distinguish between the two. The difference between causation in personal injury cases and causation in death cases, because the issue in I can be injured and have an injury, yet I can die from a cause not attributable to my injury. So, for example, if I have cancer of the lung, I can die of a heart attack, and unless they're shown to be related, there's no cause that can be inferred from the finding that my injury was caused by cancer. Isn't that the California law? That is absolutely true. And that's your theory here is that they had to prove medical causation and didn't. Correct. But didn't you agree that she died as a result of the cancer that was found earlier? We agreed that the distinction between medical causation and wrongful death and medical causation and personal injury was not at issue here. We never agreed that they had met their burden of proving pre-immunity period medical causation. But, Your Honor, the reason why, and we would take the position, in fact, that the ordinary rules of substantial factor do not apply here, that what Planoff had to show is that if you take the immunity period smoking out of the equation entirely, she would not have gotten sick, and that's the opinion that her expert could not get. So go back to my hypothetical, i.e., no one's trying to hold you liable for that period. We don't care whose cigarette she was smoking during that period. Why doesn't that wash the problem out? Because the issue here is that the Planoff had to show that our conduct caused her to become ill. Okay, and the final clause was Planoff's injury caused by a negligent failure of defendant adequately to warn her about the dangers of cigarette smoking. Yes. So why didn't she prove that you're, why isn't that exactly saying that what you did before 1969 caused her injury? Because what she had to prove to the first jury under the instructions in the verdict form that were given in that case was that the pre-1969 acts caused her whole smoking history. She wasn't required to prove that they caused her smoking history from 1956 to 1988 and that that period of her smoking history was sufficient to cause her lung cancer. So to go back to my question then, you are, it seems to me you are trying, you are arguing that there was an override of the California causation law. Because under California causation law, it wouldn't matter, this other period wouldn't matter if you had caused her injury in the earlier period. And you're saying, no, the later smoking has to, well, back, unless I'm misunderstanding something, my understanding is that ordinary California causation law would say maybe her injury was caused by two things, i.e., the failure to warn her before 1969 and her continued smoking through the immune period. And you're saying that that's no longer the law with regard to the immune period. Well, even if that is the law, the jury was not required to make that finding. The jury was not even required. It found that it was caused by the, her, your activity before 1969. It may have also been caused, a second cause may have been her continued smoking, but that is a second cause and under California law ordinarily wouldn't matter. So unless you're willing to tell me that there's an override in this statute, I don't see what your theory is. The theory is that the jury was never asked to find that the smoking from 1956 to 1988 was any cause at all. It made no finding about that period. Right, and under California law, ordinary California law, it wouldn't have to, as long as the period before 1969 was a substantial cause. But the jury never made that finding either. The jury never found that her smoking before... An unusual sort of theory of legal causation and it may be somewhat unique to tobacco cases and asbestos cases and other mass torts. The theory here was that the 1969 date, the magic of that, was that there's a federal preemption of certain claims after 1969. So the theory is that the claims that weren't preempted before 1969, that the conduct on those claims, that you didn't tell me cigarettes caused cancer before 1969, because you didn't tell me that, I started smoking in 1956. There was never any claim that the smoking from 56 to 69 caused the cancer. There was never any claim that the smoking from 56 to 88 caused the cancer. What the theory was, was that because you did, you failed to tell me before 1969 that smoking was dangerous, I smoked for that period of time and I got hooked. Okay, but the jury was also told that you may not find defendant liable on plaintiff's claims of defective product negligence or fraud based on conduct between January 1st, 1988 and December 31st, 1997. So that means that you're saying, why doesn't that back out that period? That doesn't back out that period because it doesn't make clear that that conduct at issue encompasses the manufacture and sale of cigarettes. And what Myers and Nagler make very clear is that there are two kinds of conduct that are relevant for immunity. One kind of conduct is the tort conduct that we're talking about, product defect. Okay, well, let's go back to the beginning then. If that is a bad instruction, why isn't that on you? Because waiver has no play in issue proclusion. It's not a waiver, it's a question of what was ultimately decided. Well, but the court is suggesting that it wasn't decided because we didn't ask for the right jury instruction. And I'm saying that that was not on us. Perhaps on the wrong jury instruction. So just why can can you come back to the question that you talked about at the outset? Because I guess I'm not yet persuaded by your argument and I want to make sure I fully understand it. Why isn't the new wrinkle, as I put it, that Myers and Nagler added? Why isn't that just a legal theory that relates to the issue of medical causation that you either raise or you're nonetheless going to be bound by whatever the outcome of that? First of all, our position is that it's not a new wrinkle because non-immunity period medical causation is actually an element of her claim under the very clear language of Nagler, which says that where a fraud claim is based in part at least on defendant's conduct in manufacturing and distributing. That is a new requirement. It's a separate issue. But I also want to respond to the court's reliance on those cases about a new legal theory or new facts. Not one of those cases involves offensive, non-mutual issue preclusion. When Planoff is making this argument, she is asking the court to do something that no court that we are aware of in California or the California federal courts has ever done. None of those cases involve different parties. First of all, so she cites five cases at pages 37 and 38 of her brief. Three of those cases are race judicata claim preclusion cases. That's Warga, Sutphin and Price. That leaves Pacific Mutual and Direct Shopping Network. Those two cases both involve the same parties. And what the party was trying to do in the second case is say, wait, wait, I know this very issue was litigated and decided against me in the first case, but now I've got a new theory or now I've got a new piece of evidence. In fact, in Direct TV it was new evidence that the person wanted to adduce. This would be mutual in the sense that if you had raised this issue in the first trial and the mother had lost, the daughter would be bound, right, in the wrongful death. I mean, there would be no wrongful death case. It's not, no, this is non-mutual in the sense that the party in the first. The daughter would be bound, right? The daughter would be bound as the estate. If the jury, right, no, that would be because that would be defensive use of issue preclusion. I don't think it would. No, it's mutual, right? No, it's not mutual. I don't concede that it's mutual. She could not because we could use it defensively. So it's whoever, whichever side prevails on that, they're going to be bound. But so I guess I'll need to go back and look at the other cases we found. We found cases beyond those that are cited in the brief. Why is it? Why does it matter if it's non-mutual offensive? Because that is the doctrine of non-mutual offensive issue preclusion of telling a party of a third party coming in and saying you can't litigate this case, this issue, even though I was not party to the earlier action. That's very disfavored in the law and the plaintiff bears the burden. I think what Judge Watford's saying is that she isn't so clearly a third party, you know, in the sense that she was probably in privity and therefore it would have been mutual. That is certainly not an argument that the plaintiff has ever made in this case and I don't believe that it is correct. I believe this is offensive non-mutual issue preclusion. But in any case, our position is that this was not a new wrinkle as to which we're making a new legal argument. Our position is that this was a separate issue in the case. Plaintiff has always taken the position that this was a separate issue in the case. That's certainly the way she describes it in her briefs and that we had the right to litigate that. She was permitted to recover a million dollars on top of the 19 million that she recovered the first time without any jury ever having found this fact against Philip Morris. I'd like to reserve the rest of my time. When the jury returned a verdict in the first case, it returned a verdict because the mother was injured, right? Yes. So it had to determine in making that decision that the smoking caused the injury, right? It could not have returned a verdict on the theories that were advanced unless it had also determined that the smoking caused the cancer and the cancer was the injury, right? That's correct, Your Honor. And isn't that the same thing that has to be proved in that you all actually agreed to in the record in this case that the smoking caused the cancer and the cancer caused the death? Didn't you agree to that? Your Honor, we agreed to that in the sense that we are not contesting that there was a separate requirement that her cancer had to have caused her death. What we are saying, though, is that the first... But isn't that medical causation? It's not immunity period medical causation. What we're saying is that the immunity statute and the way in which that statute was repealed create a new element that... And you're reading Myers to say that, but it seemed more directly to say that it was the conduct during that period. No. Myers makes extremely clear about six times in the opinion that the conduct in question is the sale of cigarettes. So it says that while the immunity statute was in effect, no tortious liability attached to a tobacco company's production and distribution of tobacco products, of pure and unadulterated tobacco products, that it would be retroactive to have repeal of governed product liability suits against tobacco companies for supplying tobacco products to smokers. But when the first jury was told that the effective product negligence or something else was not, was backed out, why isn't that the case? You say that's not the production of tobacco. Why isn't it the production of tobacco? Because it's tortious conduct. It's the separate question. It wasn't told that the sale of cigarettes during that period could not contribute to their finding of medical causation. That's what we're saying the error was here. Okay. We'll give you a little time to rebuttal because you took your time. Thank you very much. Good morning, Your Honors. Janice Mazur, may it please the Court, appearing for Jody Bullock. And I'd like to reserve about four or five minutes for my cross-appeal issues. I'd like to reserve about four minutes for the cross-appeal issues. I think that Philip Marsh is making this way more complicated than it is. I think this isn't too different from a garden variety collateral estoppel issue. California law very clearly establishes that if a decedent prevailed in her own personal injury action, the heirs have an independent action. And the wrongful death plaintiff has to prove that the defendant's wrongful act or neglect caused the decedent's death. In those circumstances, under Brown v. Raman, the heir may use collateral estoppel on the issue of liability. So when we look at what happened in Betty Bullock's case, as counsel noted, the Myers case came down two weeks before that case was tried. For that reason, and this sets it apart from some of the earlier cases, the jury was properly instructed, in accordance with the Myers decision, that you may not find the defendant liable on plaintiff's claims for defective product, negligence, or fraud for any conduct during community period. I mean, the jury was not given the proper instruction in this case, because it should have been told that any smoking between, what are the years, 1988 and 1998, could not be the source of liability, and so, therefore, your expert would have been required to opine that she would still have developed lung cancer, even if she had quit as of 1988. And I think, in fact, he or she said, I can't. Well, actually, that's not correct, Your Honor. He actually did say what the expert did testify to, and you can look at ER page 142 on this. The expert testified that if Betty had only smoked during the 10-year immunity period, to a medical certainty, she would not have gotten cancer, and that certainly... That has nothing to do with the relevant issue. The relevant issue is, did her smoking between 1956 and 1988, if that had been the only period that she had smoked, would she nonetheless have still developed her lung cancer? And I think your expert said, I'm not able to say that. He said that if she had quit before 1988, that her chances of getting cancer would have been reduced. He did not say that she wouldn't have gotten it. The effect of Myers is to say that, no, actually, it's your burden as the plaintiff to prove that your cancer, not your, but the mother's cancer, would have been caused solely by the smoking pre-1988. And the jury was never asked to make that finding here. So that's why I don't, I mean, I'm with your opponent on that point. I nonetheless think you might have the better of the argument, though, on whether issue preclusion nonetheless applies, because there was no change in the law, right? There absolutely was no change. In fact, the conclusion of the Myers case specifically states that for the defendant's conduct outside of the immunity period, the standard general tort principles of California law apply and did not change. I mean, they definitely changed with respect to smoking cases after Myers. Well, for periods outside of the, for their conduct outside of the immunity period. In other words, for the immunity period, that immunity still applied for that 10-year period. But for any defendant's conduct outside the immunity period, California law remained as it had been, and their liability was the same. And so when the jury was instructed that the cause of injury is defined as something that must be a substantial factor in bringing about the injury, that's exactly what they found. And they found it based on three separate grounds, that the defendant's conduct outside of the immunity period was the cause and was a substantial factor of Betty's cancer. And again, there was no dispute that the cancer is what caused her death, and that the cancer was 100 percent caused by smoking, and she only smoked Philip Morris products. I think that the Myers decision makes it abundantly clear that the issue does not revolve around when plaintiff used the cigarettes, but rather it's the defendant's conduct. And so we go back to the jury verdict, and we've got three separate findings that the defendant's conduct outside of the immunity period is what caused her injury. As far as the medical causation, I think it is absolutely subsumed in that jury's finding. Collateral estoppel goes to where there's an issue of ultimate fact, and the ultimate fact in this case is whether Philip Morris's conduct outside the immunity period caused Betty Bullock's injury, and I believe that's exactly what the jury found. The defendant has conceded that in order to prove that a product was a substantial factor, the plaintiff has to show that the harm was caused by the product, as opposed to something else, like genetics. Betty did that. The expert testified that her cancer was 100 percent caused by smoking cigarettes, and she only smoked Philip Morris cigarettes. The plaintiff must also show that the defendant's tort caused the harm, and the jury made three findings that the defendant's tortious actions outside the immunity period did cause the harm. I just don't think you're meeting the issue at all. I mean, you can continue, but I don't think this is responsive at all to the argument they're making. And I think maybe you're just misreading Myers. Myers is very clear that the whole theory of this immunity period was that by 1988, it was so widely known that smoking was hazardous to your health that basically it's on you if you continue to smoke after that period. And so that 10-year period has to be backed out because, you know, basically Mrs. Bullock should have known that continuing to smoke would harm her health. Right. So what she needs to show is that all of the smoking she did up until 1988, that that would have been sufficient on its own to nonetheless cause the same medical condition that she developed. And I just you're not going to make any progress arguing to us that somehow the jury did make that finding because it never was asked to. Well, but the experts certainly did provide evidence that was sufficient, well more than sufficient to support that. And there was no, at that point, there was three appeals and new trial motions, and it was never raised, this issue was never raised by Philip Morris and never attended to by them to suggest that they needed a new trial because this hadn't been, this issue hadn't been addressed or that the jury somehow, the finding was not subsumed within that finding. Both the statute and the original immunity statute and the repeal statute are talking about liability under existing causes of action, i.e. negligence, fraud, et cetera. And they're saying you can't be liable for this period. Do they say that any, that simply manufacturing and distributing during that period is backed out or do they say that liability on existing causes of action are backed out? I mean, I guess I'm not, this is a somewhat friendly question. I don't understand the dynamic either in the immunity statute or in the repeal statute to be about simply smoking during that period. I would agree with that, right. Well, I'm not being all that articulate, but I'm having trouble understanding why, as I was saying before, if the tobacco is coming from the moon, you know, no one's trying to hold anybody liable for anything, for the actual smoking during that period. Does either the immune statute or the repeal statute have anything to say about it? What are they addressing according to Myers? What's being addressed? Well, I think that the question that this court certified to Myers was whether or not the conduct that predated the immunity statute was, what was the impact of the repeal on the conduct that predated the statute. And the Myers court's answer to that was the immunity statute applies to certain statutorily described conduct of the tobacco companies that occurred during the 10-year immunity period. With respect to that conduct, the statutory immunity applies with respect to, it applies and with respect to conduct falling outside the immunity period, the tobacco companies are not shielded from product liability laws, and product liability laws would include failure to warn and fraud and all the other claims that the jury found existed in this case. Do you think that Myers decided that medical causation and proximate cause were two different questions in product liability cases involving cigarettes? I don't think that Myers decided that, Your Honor. I think that Myers was dealing strictly with the effect of the repeal, and I don't think that it particularly added a specific new, any kind of a new element to the burden of a plaintiff to prove liability. I think that the existing causes of action that always existed generally in California law for product liability applied to now to smoking cases. With respect to proximate causation and substantial factor causation, both of which the earlier jury was instructed on. Right. So, you know, I don't think that Myers created any new element for a products liability case. I think that medical causation, as the district court found, is not a separate element but is actually part of proximate causation and that there are certain, there can be instances when there's a distinction and the Rutherford case talks about this, there can be a distinction between. Was anything in the earlier jury's instructions dependent on her continuing to smoke after 1988? I don't believe so. It could be before or after. When it found that she, that the company was liable for having caused her injury pre-1969, they weren't, they instructed that that meant that she, we were told before that essentially they found that she, the finding was dependent on her having smoked to 2001. Was anything in the instructions dependent on her having smoked through 2001 versus until 1988 or any other time period? No, I think the instructions were just that you cannot consider, you can't find liability based on the 10-year immunity period, but anything before or after was. The facts before the jury suggested, indicated that she smoked through 2001. Right. But they weren't required to base their finding on that. Right, and I think that as long as they were properly, they were instructed that they couldn't consider the 10-year period, and so whatever happened before or after. And so the jury verdict had three specific findings that dealt with pre-1969, which of course is outside the immunity period, but then it had three or four other findings that had to do, that didn't specify a date. However, they were instructed that they couldn't consider the 10-year period. So I think that that would encompass time both before and after the immunity period that the jury was allowed to consider, and in addition to that had to find substantial factor as to all of the claims. Can you point to where in the first trial that the jury was told that Ms. Bullock's lung cancer was caused by smoking, had to be caused by smoking outside the immunity period for it to impose liability? I don't believe they were found that it had to be caused by smoking outside the immunity period. They found that they could not consider defendant's conduct during that period. But there was no dispute that the smoking is what caused her cancer. Where were they told that they had to find that her lung cancer was caused by smoking outside the immunity period before they could impose liability? Well, her injury was lung cancer. Well, do you agree that the statute as interpreted in Myers requires that smoking during the immune period was not any aspect of why her injury came about? I don't think you're reading the statute that way. No, I think that the defendant is focusing on her conduct. When did she smoke? And I don't think that's what Myers requires. I think what Myers says is that you've got to look at the defendant's conduct. Well, she somewhat switched gears this morning and said that it's the sale or manufacturer during that period, not exactly whether she smoked. Her smoking depended on somebody manufacturing it. And so I suppose we're back in the... You're certainly right about the conduct theory, but I suppose your opponent would say that still somebody had a manufacturer and sold those cigarettes. But I keep getting hung up on the fact that it's somebody. It didn't have to be Philip Myers. Right, but it was Philip Myers, and that's what she used. But your case would be exactly the same right now had she switched to smoking an American tobacco product in 1988, right? Well, then she would have to prove, she might have some, you know, she would have an obligation to try to prove that depending on who she sued, you know, that the defendant that she sued is that person, that company's product. Your theory has to be that the immune period, the actions of Philip Myers during this immune period do not matter based on the findings that were made by the earlier jury. So it wouldn't matter whose cigarette she was smoking, because the problem is... Oh, for purposes of the wrongful death case. Right. Well, if she was smoking somebody else's cigarettes during the immune period, still the pre-'69, the finding that the pre-'69 activity caused her injury would still get you to the same place no matter whose cigarette she was smoking. Right, right, and so, and I think that that finding is sufficient in order to get, getting back to what the ultimate fact was, did Philip Myers' conduct outside the immune period cause her injury and ultimately her death? And the finding was yes, and I think that's sufficient for purposes of the wrongful death. And if Philip Myers had closed down in 1988, it wouldn't be any different. That's correct. Are you going to address your issues on the cross-appeal? Yeah, I wanted to briefly touch on that, Your Honor. Thank you. I think what we have, this is a case that has, it was obviously solely a damage case, and we've got four separate issues and what, four separate errors that all went to that damage issue, and I think if you look at them cumulatively, they all combined to create confusion for the jurors and prejudice. We've got the admission of irrelevant and inadmissible evidence that Betty recovered money based on the same facts. It was absolutely unnecessary for the jury to hear that. It was irrelevant evidence. There was no reason, since there was no overlap between the damages that Betty got and the damages that Jody was seeking, there was no reason for them to know that that was irrelevant. It was inadmissible evidence. Well, it wasn't, correct me if I'm wrong, but it wasn't evidence. It was just the judge at the outset of the case telling the jury what had happened. The information, maybe that would be. But both parties were able to argue that. It was essentially information that the jury was permitted to consider and was emphasized in closing arguments that really was irrelevant. And the trial counsel, Mr. Hughes. I mean, if you were sitting on that jury, you would certainly want to know why you were just deciding damages. Well, I think that the jury needs to follow the judge's instructions. If the judge, under many cases, the judge. In terms of telling them what they were doing there. Right. Well, I think it would have been very easy for the judge to say liability for this has already been decided. Now we're just going to decide what the damages are. And bifurcated cases happen all the time. But what the judge also wanted to do, and I think properly so, is make clear for the jury that there are two separate sets of damages. We're only here to decide one of them. Absolutely. So in that sense, I understand why the judge's instinct was to tell the jury, listen, the mother's injuries have already been addressed in that earlier trial. She's I hear what you're saying. Maybe she didn't need to say been fully compensated or whatever. But she wanted to make clear that the mother's injuries have been addressed. We're here for this different set of. Right. And it's absolutely would have absolutely been appropriate and necessary, I think, for the court to tell the jury you are not to award Jody any damages for Mrs. For Betty's pain, suffering for her illness, for her medical expenses and all that. That's not before you. That's not an issue that you need to decide. That's pretty much what the judge said. I would agree with you if the judge had said, listen, members of the jury, the mother already got 20 million dollars and all that money went to the daughter. And so, you know, I mean, that would be easy. Right. Right. And so there wasn't a dollar figure, but certainly saying she got money. But the thing that was was, you know, you know, very telling. What did the judge say wrong when giving the instruction? The judge, the judge said that Mrs. Betty Bullock has already been paid money. There's already been a judgment. Philip Marsh has already paid it for the death, for the for the for the mother. For the injury for the mother. They've already. In other words, she said they've already paid money. And I know it was 50 cents. Right. Well, they they didn't have a number. But but as we saw, it could have influenced them in various directions, depending what they guessed about the actual judgment. Well, the the the thing that's curious about is when this distressed juror, the juror came in and said, I'd like to talk to the court and says something. In fact, I don't know. I don't know why we're here. She already got her money. You know, that was exactly the concern that defense counsel, that plaintiff's counsel had expressed when they were talking about whether the jury should be told that there was money that had been paid. And he said, geez, somebody is going to come in and say, gee whiz, what are we doing here? She already got her money. And that's almost word for word. What happened when the juror came in and said she was very upset about that? We add that to the other issues. That got straightened out, though, didn't it, by the judge and instruction? No. Well, it didn't get straightened out. I mean, the juror was allowed to remain the juror who was very uncomfortable about that situation. And I believe very tainted and who had been dishonest. And this is an important point, I think. She had been dishonest in voir dire by not disclosing that she was uncomfortable because they did ask questions about the way the judge read it. She was really uncomfortable about having to sit in the jury because everybody had been asked about this other thing. It was a convenient thing to say. Right. Right. Everybody had been asked. She had been asked and she didn't express anything. It was a convenient thing to say, not necessarily because she actually believed it. Well, the point is that if a juror is dishonest during voir dire, and I think the judge did make some kind of a statement to the effect that she felt she was dishonest and she hadn't said that before, that's grounds right there for a new trial. But if we combine the fact that the jury was told that Betty got money, an irrelevant and inadmissible fact. I mean, I find it a little surprising that you really wanted a new trial. You got a million dollars and you could get a lot less. I mean, surprising. I mean, that, well, go ahead. Surprised that. That you actually wanted a new trial. I gather you do, but. Well, yeah, and based on the other jury verdicts in similar cases, this was a very low verdict. In similar cases? Smoking cases? Similar. For wrongful death cases. Smoking wrongful death cases? Yes. Smoking wrongful. Well, in wrongful death cases and some of the. Boking. Yeah, yeah. The Boking case, I think the verdict for the wrongful death was I believe $14 million. So, yeah, this was considered to be, Philip Morris considered this to be a win on the wrongful death case. So, but just very briefly, just touching on plaintiff's, I mean, defendant's counsel's argument that Jody should have presented evidence either expressing what she thought the value of her loss was or bringing an expert in. This was clearly an. Were you with the lawyer? No, I was not. My understanding is that the lawyer made a very vague ask in terms of amount of money. She made no attempt at all to sort of quantify the loss. The trial lawyer argued multiples of 10, $10 to $20 million. Without explaining why, without giving any kind of quantification by year or by period or anything. She just appeared to me not to have really done her job, which is why the jury was kind of upset. Well, I think. Especially in light of all kinds of studies about anchoring and so on. You have to give somebody a number. Well, they were precluded from presenting an expert witness. I understand that. But the lawyer could have argued for an amount of money, right? Yeah. Specifically with some kind of a theory. Right. He did argue for an amount of money and talked about the fact. Well, it was completely vague. It was like tens of millions of dollars.  And I think that the plaintiff's theory was going to be that, you know, that this is the. . . And it would have gone on for another 20 years. Jody was 40. Basically, she lost a third of her lifetime with her mother because the mother would have lived another 20 years is what the stipulated fact was. And so, you know, how anybody puts a dollar value on a. . . If it's, you know, per year or per hug or however you would, you know, quantify that. Isn't it somewhat received wisdom among trial lawyers that you have to do that? Because of exactly what happened here. The jury said, well, we're not supposed to speculate. What are we supposed to do? The California law doesn't really require or doesn't allow any witness to give a value. Okay. I'm not talking about a witness. I'm talking about a lawyer trying to make a specific argument to a jury about a specific amount of money, which didn't happen here, which is probably what the problem was. Well, I think that, you know, to the extent that's a problem, it doesn't relieve the court of the other problems that were court created and defense counsel created. And we've got what we characterize as four serious issues related to damage that would have contributed to the jury's confusion or discomfort or inability to come to a number, particularly counsel's argument that said that Jody had to come up with something and should have come up with evidence that she was plainly precluded from coming up with. And I think that casts a lot of doubt as far as the jurors are concerned, because suddenly they're thinking. But when she said she hasn't given you any amount of money, you're reading that to mean Jody should have testified to amount of money, as opposed to the lawyer should have given you an amount of money, because Jody includes the lawyer. Right. And that's certainly permissible and probably right. Well, I mean, I can't speak to the strategy that was employed as far as closing argument, but what I can do is ask the court to focus attention on the errors and determine whether the trial court made errors and whether any one of them or any combination of all of them. I'm saying that that error did not include to me the notion that Jody should have gotten up on the stand and testified, as opposed to her presentation should have included an amount of money. Sure. I understand. I understand your point, Your Honor. But that doesn't change the fact that the defense counsel incorrectly told the jury, I mean, told the jury that she could have done that, and she couldn't. That she could have done what? That she could have testified to an amount. No, she didn't. That's what I'm saying. I don't think she did say that. She said that she should have given you some amount of money. She didn't say she should have gotten up on the witness stand and told you an amount of money. Well, she said she could have given you some kind of a value. Exactly. And then she also said that she could have had an expert witness come in, and which clearly is incorrect. All right. You're way over your time. Thank you very much. Thank you very much, Your Honor. I'll give you four minutes to catch up. Thank you, Your Honor. That's generous. I appreciate it. I want to return first. Four minutes. Okay. Thank you, Your Honor. All right. I'm just trying to get the number on the bat. I want to go back to Judge Watford's question about whether this was just a wrinkle or a new piece of evidence. It really wasn't, and I think that if the court were to take that approach, it would really create an exception. It would swallow the rule in collateral estoppel litigation. So we agree that if Philip Morris had won the first case, Ms. Bullock wouldn't have been able to bring a second case. We agree with that. But if the court looks at these cases that say that they're – that bar people from raising new evidence to defeat collateral estoppel, it's always new evidence. It's like – the court may have other cases that I'm aware of. I'm looking at the ones that are cited in the brief, and I'm looking at the cases that are cited in those cases. Direct shopping network, the parties agreed that it was the same issues and that it was just new evidence that the non-proponent, the opponent of estoppel wanted to bring in. Evans v. Salatex, again, it was new evidence that the person wanted to bring in. The Saunders case, which we cited in our reply brief, is pretty instructive on this. The court says we know that there is some loose language in the cases about defeating collateral – how you can't defeat collateral estoppel with things that you could have raised in the first case. But we want to make clear that where the doctrine of res judicata is applied in its secondary aspect as a collateral estoppel rather than in its primary sense as a merger or bar, the effect of the prior judgment is confined only to those issues in the second action, which were actually litigated in the first. So the court is reaffirming. Right, but that depends on how you define the issue, right? Right. I think medical causation was the issue that was put before the jury, and it just seems to me you had an argument, a legal argument available to you that would have made more demanding the standard that the plaintiff needed to meet, and you didn't make that argument. And therefore, the issue went to the jury in a watered-down form, and now you want to say, oh, but we've come up with a better argument, Your Honor, that we wish we had made the first time, and you don't get to do that. It's really a very distinct issue, Your Honor. I don't think it is fair to characterize it as just a different wrinkle or a different legal argument. The medical causation question that was put to this jury, as Judge Payne indicated, was did the cigarettes cause the cancer, did the cancer cause, and then subsequently, did the cancer cause the death? That was the only medical question. And it wasn't really disputed that the cigarettes caused the cancer, because she had a type of cancer that is pretty much only caused by smoking. Let me put it in this, let me give you this hypothetical. Let's say that you try a negligence case to the jury, and you don't raise an assumption of the risk defense, right? So that issue is never put before the jury. You're found liable. I don't think in the second trial you get to litigate it all over again and say, you know what? Because we didn't assert a defense that was available to us, we now want to basically have a second bite at the apple. I think you're compelled to raise all of the arguments and defense you have in that first trial, and if you don't and the verdict goes against you, you're going to be precluded, right? I don't know whether that, I don't know that that hypothetical is on point, Your Honor, though, because whether or not collateral estoppel would apply to a defense, this is an element of her claim. What Myers did was it created a new element of her claim. You're slicing the claim by adding something that should have been in there the first time as to the claim that was litigated. And, yeah, you're calling it something new. But, in fact, it is, I suspect you could probably do that in any issue preclusion case, practically. That is that, oh, there is something, some subcategory of the issue that we didn't sufficiently emphasize, and now we want to do that. Because the question, the ultimate question was can, could the company be held liable, and it was held liable for activity before 1969 which caused her cancer. And that was the ultimate conclusion, i.e., their activity before 1969 caused her cancer. You're saying, well, that necessarily included the smoking between 1988 and 1998, are those the years that we're talking about? Those are the years, Your Honor. We don't even know that it did. We don't know what it did. Well, we don't know what it did, and that's exactly why we submit you can't apply collateral estoppel. Well, we know that they didn't consider or they were told not to consider fraud, product defects, and something else during that period. And that's another problem I have in terms of Myers. The immune period is an immune period for liability for conduct, right? Liability means you did something wrong. You're saying that you can't even consider the manufacturing distribution without any wrong. Yes, that's exactly what you're saying, Your Honor. It doesn't have to be wrong. We submit that that is exactly what the California Supreme Court said explicitly in Myers and Nagla. It doesn't say that. Oh, it said, we submit that it did, Your Honor. It said it in Myers in the quotations that I gave the Court earlier, and it said it in Nagla. It said that liability can't be based on even in part. In the community statute declared legally permissible and not wrongful certain conduct of tobacco companies. It has to be something that would otherwise be wrongful. I mean, in other words, you're reading the statute as backing out not liable behavior or wrongful behavior, but any behavior. Yes, Your Honor. We do read the statute that way. We read it that way because Myers specifically said that the conduct at issue encompassed production and distribution, supplying tobacco products, conduct in manufacturing and distributing. But only if it would otherwise lead to liability. I mean, this is why I keep coming up with this hypothetical about what if it's another tobacco company. I mean, you're not being held liable in a legal sense. So one way that this came up, Your Honor, I know I'm totally out of time, beyond out of time, but one way that this came up was in the Richards case, which was litigated and decided during the immunity period, but was relied on by the California Supreme Court in Myers. The issue in Richards, Richards was an asbestos case, and there was no tobacco company defendant, but the defendant, the asbestos company, wanted to do an empty chair defense and point a finger at the tobacco companies and have the jury assign fault to those tobacco companies. Not for any particular conduct, but for selling cigarettes that contributed to the plaintiff's disease. And the California court said, no, you can't do that because there's no liability on any theory, with a couple of exceptions not relevant here, for cigarettes sold during this period of time. And so it would be anomalous to assign fault to them when they couldn't be held liable for any injuries arising from their products that were sold during that time. They couldn't be held liable, i.e., there is no cause of action that applies to them. That's a different question. Just very briefly on the plaintiff's cross-appeal, Your Honor, because I haven't had an opportunity to address that. All right. Really quickly. Very quickly. 60 seconds. The court, I think, Your Honor, put your finger on it when you pointed to the fact that the plaintiff got a million dollars here on top of the $19 million that was asserted earlier. Plaintiff has raised five issues on her cross-appeal. Three of them are waived for the reasons we said in our briefs. The other two are meritless. The question before the jury here was not whether Jody was saddened or suffered emotional injury as a result of the loss of her mother. It's undisputed that she did. The jury certainly was within its power to find that she suffered no compensable damages under California law. And, in fact, it didn't find that. All of the errors that plaintiff points to, if they had actually had an effect on the jury, would have resulted in a zero award. The jury awarded her a million dollars, and it was certainly within its discretion, and as the district court found, to find that that was adequate compensation for the loss of support and services to somebody who was already established as an adult at that point in her life, was married, had a child. There was nothing wrong with the way in which those issues were tried, and this is just an attempt to go back. I just want to make clear about the relief that we are seeking. We are only seeking a new trial limited to the medical causation outside the immunity period issue. If the court is inclined to reject that, our appeal, we request that the court affirm and that the case be over. Thank you, Your Honor. Thank you very much. Thank both of you for an interesting argument, an interesting case. Bullock v. Fulop Morris is submitted, and we are in recess. Thank you.
judges: Berzon, Watford, Payne